**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| M & I Bank, FSB, | ) | No. CV09-2282-PHX-NVW |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Ty Coughlin, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## I.    Introduction

The question posed is whether an Arizona statute, A.R.S. § 33-814(D), bars a lender's action against third parties associated with a deed of trust loan transaction — that is, persons other than the borrower or others liable on the note — if the lender brings that action more than 90 days after the trustee's sale disposing of the property securing the note.

Plaintiff M&I Bank alleges that it was tricked into funding a $285,300 real estate loan to Defendant Ty Coughlin. His annual income was represented as exceeding $360,000, when it was only about $24,000. He was supposed to contribute $32,521.86 to the closing, but the seller funded the closing. As alleged, this was a flagrant seller and buyer fraud on the lender. The brokerage contract with M&I made the mortgage broker the guarantor of the loan application, putting the burden of due diligence and the risk of fraud on the broker. The

1

escrow agent agreed, among other things, to accept funds only from the borrower's verified account and to disclose all relevant information to M&I.

Coughlin defaulted and the property — a parcel of vacant land — was sold at a non-judicial trustee's sale. M&I was the successful bidder for $125,375.46, far less than the full amount of its note. That is, M&I made a partial credit bid, not a full credit bid. M&I then resold the property for less than the amount of its partial credit bid.

Based on these alleged facts, M&I brought suit against Coughlin, the seller, the broker, and the escrow agent, alleging fraud, breach of the brokerage contract, breach of the escrow agreement, negligent misrepresentation, and other claims. As damages, M&I requests (among other things) the difference between the amount it lent Coughlin and the amount of its winning bid at the trustee's sale. The prayer for damages is "no less than $159,838.54." (Doc. 32.) This action was brought more than 90 days after the trustee's sale.

The seller, the broker, and the escrow agent (but not the borrower, Coughlin) now move for judgment on the pleadings.[1] (Docs. 80, 81, 95.) They seek to dismiss M&I's claims against them based on the following language from Arizona's statutes regulating trustee's sales of real property:

> If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section [usually 90 days after the trustee's sale], the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist.

A.R.S. § 33-814(D). Defendants contend that the plain language of this subsection — which the Court will sometimes refer to as "subsection D" — dictates dismissal because M&I's attempt to recover its losses on the Coughlin loan is effectively an "action . . . for a deficiency judgment" brought more than 90 days after the trustee's sale and M&I's debt is

---

[1] In this order the moving Defendants — the seller, the broker, and the escrow agent — are referred to as the Defendants. Though the borrower, Coughlin, is also a Defendant, he is generally not included in that reference.

2

1  deemed paid in full, though it was not in fact paid in full. They thus contend there is no loss
2  to the lender and no damage to support any claim against anyone else in connection with the
3  loan.

4      Defendants' argument, if correct, would have far-reaching consequences. It would
5  require lenders to uncover all wrongdoing related to a bad real estate loan and identify all of
6  its perpetrators far more rapidly than statutes of limitations relating to their conduct would
7  require. *See*, *e.g.*, A.R.S. § 12-543(3) (three-year limitations period for fraud, which begins
8  to run upon "discovery by the aggrieved party of the facts constituting the fraud or mistake");
9  A.R.S. § 12-548 (six-year limitations period for action on written contract executed within
10  the state). Indeed, it would protect scam artists clever enough to avoid detection for 90 days
11  after the trustee's sale.

12      The Court does not take subsection D as yielding this surprising result. A thorough
13  examination of the Arizona Deed of Trust Act, its evolution, its use of terms of legal art, and
14  its structure and purposes shows that the statute can and should be read as limiting only the
15  obligation of a borrower and "any person directly, indirectly or contingently liable on the
16  contract for which the trust deed was given as security." A.R.S. § 33-814(A). In short,
17  borrowers, partners, guarantors, and other persons "directly, indirectly or contingently liable
18  on the contract" are protected by subsection D's 90-day limit for bringing a deficiency action.
19  Defendants are not among the class of persons so protected, and therefore subsection D does
20  not shield Defendants from liability, even if M&I is eventually awarded damages calculated
21  with respect to the indebtedness that M&I was unable to recover through the trustee's sale.

22  **II.    Legal Standard**

23      "Rules 12(b)(6) and 12(c) are substantially identical." *Strigliabotti v. Franklin*
24  *Resources, Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005). Rule 12(c) motions for
25  judgment on the pleadings are therefore reviewed under the standard applicable to a Rule
26  12(b)(6) motion to dismiss for failure to state a claim. *See Aldabe v. Aldabe*, 616 F.2d 1089,
27  1093 (9th Cir. 1980). In ruling on a Rule 12(c) motion, the Court must "determine whether
28  the facts alleged in the complaint, to be taken for [the purposes of a Rule 12(c) motion] as

true, entitle the plaintiff to a legal remedy." *Strigliabotti*, 398 F. Supp. 2d at 1097. "If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings." *Id.* A Rule 12(c) motion is thus properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009).

## III. The Deed of Trust Act

### A. Origins and Purposes

The contractual instrument known as a "deed of trust" has existed for a long time in Arizona, but "historically it has been treated as a mortgage." Gary E. Lawyer, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz. L. Rev. 194, 194 n.5 (1973). A "realty mortgage must be foreclosed by judicial action," which can be a lengthy and expensive process, followed by a six-month redemption period that further delays the foreclosing party's realization of value from the property. *See id.* at 194–95, 199; *see also Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 277, 440 P.2d 105, 110 (1968) ("in Arizona . . . a mortgage can only be foreclosed by court action, with a definite redemption period"). Indeed, before 1971, deed of trust terms purporting to grant a power of extra-judicial sale were invalid, and the deed of trust therefore required judicial foreclosure. *See*, *e.g.*, *Schwertner v. Provident Mut. Bldg. Loan Ass'n*, 17 Ariz. 93, 94, 148 P. 910, 910 (1915).

In 1971 the legislature added chapter 6.1 to title 33 of the Arizona Revised Statutes. *See* 1971 Ariz. Sess. Laws, ch. 136 § 7 (*codified at* A.R.S. § 33-801 to -821). Through chapter 6.1, known as the Deed of Trust Act, Arizona for the first time recognized the deed of trust (or "trust deed") as a real property security device distinct from a mortgage. The Act set forth detailed provisions governing formation and administration of trust deeds, and introduced procedures that differ markedly from the procedures governing mortgages.

One of the most notable differences enacted by the Deed of Trust Act was recognition of the "power of sale." This power permits the trust deed beneficiary (typically the lender) to cause the trust property to be sold and to apply the proceeds of that sale to a defaulted loan, without going to court. Unlike mortgage foreclosures, which always begin with the

4

filing of a lawsuit, a sale under the power of sale begins when a trustee (appointed by the beneficiary) files a notice of trustee's sale giving the defaulting borrower 90 days to get current. If the borrower does not do so, and if the trustee complies with all of the Act's requirements, the trustee can then auction the property. The borrower has no right of redemption after such a sale, and the successful bidder is entitled to immediate possession. If the winning bid does not fully repay the beneficiary, the Act establishes requirements for a court judgment against the borrower for the balance of the contract debt, excepting debts incurred to purchase certain residential properties. *See* Lawyer, *supra*, at 202–10.

The trustee's sale does not determine that the borrower was in default on the note or adjudicate any other substantive matter between the borrower and the beneficiary. The borrower may bring a plenary action to adjudicate that he was not in default and that the trustee's sale was therefore wrongful. If the court so adjudicates, the trustee's sale and deed are invalidated, and the beneficiary will be liable for breach of the note and the deed of trust and for wrongful eviction if the borrower has lost possession in the mean time. *See*, *e.g.*, *In re Hills*, 299 B.R. 581 (Bankr. D. Ariz. 2002); *In re Steiner*, 251 B.R. 137 (Bankr. D. Ariz. 2000); *Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993).[2]

---

[2] The Deed of Trust Act has long limited post-sale actions seeking to unwind the trustee's sale on grounds of improper notice. *See* A.R.S. § 33-811(B) ("A trustee's deed shall constitute conclusive evidence of the meeting of [pre-sale notice] requirements in favor of purchasers or encumbrancers for value and without actual notice."). However, a relatively recent amendment to the Act, § 33-811(C), has been argued to extinguish literally "all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale." A.R.S. § 33-811(C); *see also Spielman v. Katz*, No. CV10-0184-PHX-JAT, 2010 WL 4038838 (D. Ariz. Oct. 14, 2010) (interpreting § 33-811(C) broadly). Other courts have disagreed, expressing skepticism about § 33-811(C)'s scope in light of non-existent legislative history and potential conflict with other portions of the Act. *See Martenson v. RG Financing*, No. CV09-1314-PHX-NVW, 2010 WL 334648 (D. Ariz. Jan. 22, 2010); *see also Silving v. Wells Fargo Bank, NA*, No. CV11-0676-PHX-DGC, 2011 WL 2669246 (D. Ariz. July 7, 2011) (calling for further briefing on the issue). There is no citable Arizona case authority. That issue need not be resolved in this case.

1    Thus, assuming the beneficiary and trustee follow appropriate procedures, the Deed

2  of Trust Act eliminates the need for judicial proceedings before conducting a trustee's sale

3  of the property securing the trust deed.  Instead, judicial proceedings should only arise if the

4  borrower elects to challenge the claim of default in a later action, or if a debt remains after

5  the trustee's sale and the borrower elects to pursue the deficiency.

6    The Act also preserves the trust deed beneficiary's option to foreclose judicially. *See*

7  Lawyer, *supra*, at 202.  If the beneficiary so chooses, then the statutes regulating mortgage

8  foreclosures govern.  A.R.S. § 33-807(A).  One such statute provides that a judgment of

9  foreclosure "shall give judgment for the entire amount [of debt] determined due, and shall

10  direct the mortgaged property, or as much thereof as is necessary to satisfy the judgment, to

11  be sold." *Id.* § 33-725(A).  Accordingly, whereas a non-judicial foreclosure under a trustee's

12  power of sale will lead to a court judgment only if the sale does not pay off the outstanding

13  debt and the beneficiary brings a separate action for deficiency judgment, a judicial

14  foreclosure requires a court judgment for the *entire* amount of debt *before* any sale.

15    **B.    The Current Structure of A.R.S. § 33-814**

16    The dispute in this case turns on the meaning of one part of the Deed of Trust Act,

17  A.R.S. § 33-814, entitled, "Action to recover balance after sale or foreclosure on property

18  under trust deed."  As the title suggests, § 33-814 governs situations (such as in this case)

19  where trust property is sold at a trustee's sale, but indebtedness remains.  This remaining

20  indebtedness is referred to as a "deficiency."  However, the parties' arguments tend to

21  conflate the procedures for pursuing a deficiency liability with the substantive debt remaining

22  after a trustee's sale.  To avoid confusing the potential meanings, the Court will use

23  "remaining indebtedness" or the "balance of the debt" wherever possible to indicate the latter

24  meaning.

25    Section 33-814 contains seven subsections, A through G, but it is difficult to

26  understand § 33-814 simply by reading it from beginning to end because most subsections

27  point elsewhere for exceptions to the rules (*e.g.*, "except as provided in subsections F and G

28

. . . .").  Given this interconnectedness, § 33-814 is perhaps best understood by working backwards, beginning with the exceptions and then moving to the general rules.

Section 33-814's principal exception is found in subsection G, which prohibits lenders from seeking the balance of the debt after a trustee's sale of typical residential property:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. § 33-814(G).  This subsection is often referred to as the "anti-deficiency statute."  The Arizona Supreme Court has interpreted it "as evincing the legislature's desire to protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price."  *Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988).[3]  This anti-deficiency statute places on the lender, not the borrower, the risk of lending more money than what the residence is worth, or is likely to be worth in the future.

A lesser-known exception in § 33-814 is subsection F, which permits lenders and borrowers to exclude personal recourse: "A deed of trust may, by express language, validly prohibit the recovery of any balance due after trust property is sold pursuant to the trustee's power of sale, or the trust deed is foreclosed in the manner provided by law for the foreclosure of mortgages on real property."  A.R.S. § 33-814(F).  This subsection is merely declaratory of what the parties could otherwise agree to.

With allowance for these exceptions, subsection A establishes the major rules for seeking the balance of the debt after a trustee's sale:

> Except as provided in subsections F and G of this section, within ninety days after the date of sale of trust property under a trust deed . . . , an action may be maintained to recover a deficiency

---

[3] The Coughlin property did not have a residence, so subsection G does not apply in this case.

7

> judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership. In any such action against such a person, the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher. . . . Any deficiency judgment recovered shall include interest on the amount of the deficiency from the date of the sale at the rate provided in the deed of trust or in any of the contracts evidencing the debt, together with any costs and disbursements of the action.

*Id.* § 33-814(A). Subsection A also defines "fair market value" and describes the procedure by which the court determines the fair market value, but those details are not relevant here.

Subsection A is very particular about the requirements for "an action . . . to recover a deficiency judgment." It must be brought within 90 days of the trustee's sale. It is an action against those "directly, indirectly or contingently liable on the contract for which the trust deed was given as security." "In any such action against such a person," the measure of damages is "the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher." "Fair market value," in turn, is calculated through specific procedures.

Subsection B then addresses multiple trustee's sales related to the same property:

> If a trustee's sale is a sale of less than all of the trust property or is a sale pursuant to one of two or more trust deeds securing the same obligation, the ninety day time limitations of subsection A of this section shall begin on either the date of the trustee's sale of the last of the trust property to be sold or the date of sale under the last trust deed securing the obligation, whichever occurs last.

*Id.* § 33-814(B).

Subsection C addresses "[t]he obligation of a person who is not a trustor to pay, satisfy or purchase all or a part of the balance due on a contract secured by a trust deed." Such obligation —

> may be enforced, if the person has so agreed, in an action regardless of whether a trustee's sale is held. If, however, a trustee's sale is held, the liability of a person who is not a trustor for the deficiency is determined pursuant to subsection A of this section and any judgment for the deficiency against the person shall be reduced in accordance with subsection A of this section. If any such action is commenced after a trustee's sale has been held, it is subject, in addition, to the ninety day time limitations of subsections A and B of this section.

*Id.* § 33-814(C).

Then comes subsection D, the basis of Defendants' motion. Previous subsections state that an "action" for a "deficiency judgment" must commence within 90 days of the trustee's sale. Subsection D restates the consequences for not doing so:

> If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist.

*Id.* § 33-814(D).

**IV.     Subsection D and the Full Credit Bid Rule**

Subsection D *at least* prohibits the lender from pursuing an "action . . . for a deficiency judgment" against the borrower if more than 90 days have elapsed since the trustee's sale. This is simply an explicit statement of the prohibition implicit in subsection A's permission to file a deficiency action within 90 days.

According to Defendants, however, subsection D's "plain language" covers much more than an "action . . . for a deficiency judgment" against the borrower. Defendants argue that the phrase "the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation" enacts a form of the "full credit bid rule," prohibiting actions

9

against third parties for claims that are measured by the balance of the debt, even though they are not claims on the secured debt. Some discussion of the full credit bid rule follows.

### A. Background on the Full Credit Bid Rule

Like anyone else, a lender may bid for property at a trustee's sale. But the lender's position differs from that of other potential purchasers because a lender's cash, if treated the same as other bidders' cash, would run a pointless "round trip": the lender (as winning bidder) would write a check to the trustee, and the trustee would in turn write a check to the lender (as beneficiary) for the same amount. "[T]o avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it," the lender is allowed to "make a credit bid up to the amount of the outstanding indebtedness." *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1238, 900 P.2d 601, 608 (1995). In other words, the lender may "bid" the money it already lent, to the extent it has not been repaid. In Arizona a credit bid may also include interest and the costs incurred arranging for the trustee's sale. A.R.S. § 33-801(5).

Sometimes lenders make a "full credit bid," meaning they bid the entire amount of unpaid principal, interest, and trustee's sale expenses. Such a bid has important consequences. "Most states . . . hold that a lender is deemed to have received repayment of a loan in full if, at a foreclosure, it successfully [credit] bids the full amount of the loan . . . ." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1006 (N.D. Ill. 2010) (internal quotation marks omitted). Not only is the lender "deemed to have received repayment of [the] loan in full," the law will not look behind the bid to see whether the bid exceeded the property's market value. *Michelson v. Camp*, 72 Cal. App. 4th 955, 963, 85 Cal. Rptr. 2d 539, 544 (1999) ("under the full credit bid rule, the market value of the property is said to be the price obtained at the foreclosure sale"). Accordingly, "when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid." *Alliance Mortg.*, 10 Cal. 4th at 1238, 900 P.2d at 608.

The full credit bid rule has various justifications, including that "[t]he lender, perhaps

more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making an informed bid." *Id.* at 1246, 900 P.2d at 613. Further, "[t]o allow the [lender], after effectively cutting off or discouraging lower bidders, to take the property — and then establish that it was worth less than the bid — encourages fraud, creates uncertainty as to the [borrower]'s rights, and most unfairly deprives the sale of whatever leaven comes from other bidders." *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.*, 28 N.Y.2d 332, 337, 270 N.E.2d 694, 697 (1971). Thus, there must be "repercussions for making a full credit bid." *Michelson*, 72 Cal. App. 4th at 964, 85 Cal. Rptr. 2d at 545.

Such repercussions can be broad, especially with respect to the lender's rights as against parties outside the lender-borrower relationship, such as insurers, appraisers, escrow agents, and brokers. For example, a full credit bid terminates the borrower's rights to insurance proceeds that would otherwise have been paid to compensate for damage to the property. *Smith v. Gen. Mortg. Corp.*, 402 Mich. 125, 128, 261 N.W.2d 710, 712 (1978); *Whitestone*, 28 N.Y.2d at 336–37, 270 N.E.2d at 696–97. A full credit bid preempts an action for waste. *Cornelison v. Kornbluth*, 15 Cal. 3d 590, 606, 542 P.2d 981, 992–93 (1975). A full credit bid may even prevent a fraud action against those accused of intentionally misleading the lender into making the loan. *Michelson*, 72 Cal. App. 4th at 962–69, 85 Cal. Rptr. 2d at 543–48.

Nonetheless, a lender can avoid all of these consequences by bidding what it believes the property is actually worth. *Cornelison*, 15 Cal. 3d at 607, 542 P.2d at 993; *Whitestone*, 28 N.Y.2d at 335, 270 N.E.2d at 696. Thus, lenders can make a rational choice: bid in the full debt and let the matter rest, or bid a lesser amount and preserve any rights that may exist to seek a deficiency judgment or to pursue others for insurance, tort damages, and so forth.

**B.** ***Mata* and the Full Credit Bid Rule**

Here, M&I did *not* make a full credit bid for the Coughlin property. Defendants nonetheless interpret subsection D's language — "the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a

deficiency in any action shall exist" — as declaring that a lender who fails to timely sue for a deficiency "shall be deemed" to have made a full credit bid at the trustee's sale, thus triggering all the collateral consequences of a full credit bid, including preclusion of claims against third parties.

In support of their argument, Defendants rely on a decision from this District by Judge Snow, *ING Bank, FSB v. Mata*, No. CV-09-748-PHX-GMS, 2009 WL 4672797 (D. Ariz. Dec. 3, 2009). In *Mata*, the plaintiff bank claimed that the defendants had conspired to create a fraudulent loan application, thereby inducing the bank to make a real estate loan it otherwise would not have made. *Id.* at *1. The loan soon went into default, and the bank bought back the property at a trustee's sale with a full credit bid. *Id.* About a year after the trustee's sale, the bank sued various defendants for fraud, negligent misrepresentation, and unjust enrichment, seeking the unpaid balance of the loan as damages. *Id.* Among the defendants in *Mata* was the mortgage broker who assembled the loan application. The broker moved to dismiss based on subsection D, claiming (as Defendants do here) that subsection D broadly protects third parties from any action whose effect is to compensate the lender for the unpaid balance of the loan.

For four reasons, Judge Snow accepted the broker's argument that subsection D protects third parties. First, recognizing that Arizona courts have not explicitly adopted the full credit bid rule, Judge Snow nonetheless accepted the mortgage broker's contention that subsection D was a statutory equivalent, and is otherwise implicit in an Arizona Supreme Court decision discussed further below, *Nussbaumer v. Superior Court*. *See Mata*, 2009 WL 4672797 at *3 n.3, *4. Second, Judge Snow found it persuasive that other states' full credit bid rules protect third parties. *Id.* at *4. Third, subsection D's "plain language" states that "sale proceeds shall be deemed a 'full satisfaction' of the obligation. If a credit-bid fully satisfies the obligation, then the creditor cannot sue third parties for damages based on any alleged deficiency in the payment of the obligation." *Id.* (citation omitted). Fourth, "the statute prohibits a right to recover an asserted deficiency in 'any action.' By its plain terms, this language mandates that, just as creditors cannot seek to recover a deficiency against the

debtor, they cannot seek to recover deficiency damages in any other action." *Id*. (citation omitted).

### C.    Arizona's Full Credit Bid Rule

*Mata* reached the right result for that case because Arizona indeed follows the full credit bid rule.  As *Mata* recognized, the rule is implicit in *Nussbaumer v. Superior Court*, 107 Ariz. 504, 489 P.2d 843 (1971).  In that case a lender brought chattel, crop, and real estate foreclose proceedings.  The lender successfully credit bid the full amount of its debt at a special execution foreclosure sale on the real estate alone.  The lender had previously sued a $20,000 crop buyer for impairment of the lender's security by that amount.  *Id*. at 504–06, 489 P.2d at 843–45.  Following the foreclosure sale, the crop buyer moved for summary judgment on the basis that its liability was secondary to the borrower's, which "was satisfied in full when [the lender] bid in the full amount of [the indebtedness] at the foreclosure sale."  *Id*. at 506, 489 P.2d at 845.  The lender parried by moving to vacate the judgment on the foreclosure sale and to withdraw its successful bid "on the grounds that [its] attorney had made a mistake in bidding the full amount of [the indebtedness] at the foreclosure sale."  *Id*.  The trial court granted the lender's motion, but the Arizona Supreme Court reversed, holding it an abuse of discretion to set aside the lender's own overbid where not caused by the misconduct of some other person.  *Id*. at 506–08, 489 P.2d at 845–47.  The Supreme Court's decision had no point absent the force of the full credit bid rule.

*Mata* also correctly noted that § 33-814(A) defines "deficiency" as —

> the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher.

This plainly means that the winning bid, partial or full, is actual payment and extinguishes the debt of persons liable for a deficiency at least to the amount of the bid, even if the market value of the collateral is less.  While it does not explicitly speak to collateral consequences of reduction or elimination of deficiency liability of persons liable on the note, it is consonant with the collateral consequences generally recognized in other states.

13

*Mata* was decided correctly on its facts, in light of the full credit bid in that case. The bank's full credit bid extinguished the borrower's debt and left the plaintiff with no loss to recover from any third-party wrongdoer. A beneficiary's credit bid, whether full or partial, is actual payment to the beneficiary to the extent of the bid, just as a cash bid and payment by a non-beneficiary would be. A beneficiary who bids high, drives out other bidders, and takes the property for the amount of its bid may not then say it was not really paid because it paid itself too much.

## V.     The Meaning of "Deficiency"

Although *Mata* correctly applied the full credit bid rule, the undersigned differs with *Mata* regarding the relationship of the full credit bid rule to subsection D. *Mata* interpreted subsection D as creating a constructive full credit bid regardless of whether a full credit bid was made, thus barring the lender from seeking "damages [from third parties] based on the value of the property," *Mata*, 2009 WL 4672797 at *3, or "damages that result from an alleged deficiency in the amount of the loan," *id.* at *5. That is also Defendants' position here. Defendants argue that subsection D's limitation on the "right to recover a deficiency in any action" extends to any action against anyone in which the measure of damages would be based on the difference between what the lender is owed and what the lender realized from the trustee's sale of the collateral. Because this is the measure of economic damages that M&I asserts against Defendants, and because M&I did not bring the action within 90 days of the trustee's sale, Defendants argue that subsection D bars M&I's claims.

However, as described above, § 33-814 speaks to a "deficiency" owed by those "directly, indirectly or contingently liable on the contract for which the trust deed was given as security." A.R.S. § 33-814(A). Nothing in the context of this section, or of the Deed of Trust Act in general, suggests that the legislature meant to go beyond limiting deficiency actions against persons liable on the note. The statute's universe of discourse encompasses them only. The legislature is unlikely to have meant to abolish liability of third parties for their own fraud, negligence, and breach of separate contracts with the lender when the Deed of Trust Act nowhere else touches on that subject. Thus, *Mata* went too far in reading § 33-

14

814(D) as fictionally deeming the trustor's debt as paid (*i.e.*, extinguished through a full credit bid) for purposes of persons not liable on the secured contract.

### A.    Textual Development of A.R.S. § 33-814 Since 1971

Interpreting "deficiency" in § 33-814 as the outcome of a special procedure involving specific parties, rather than the *in rem* extinguishment of the unpaid debt, is supported by § 33-814's textual development since 1971, especially the development of subsections A and D.  As enacted in 1971, subsection A stated that —

> within three months after the date of sale of property under a trust deed . . . , an action may be maintained to recover a deficiency judgment for the balance due on the contract for which the trust deed was given as security.  Such deficiency judgment shall be for an amount equal to the sum of the amount owing, as determined by the judgment, with interest, costs and disbursements of the action and the amount owing on all prior liens and encumbrances with interest, less the fair market value of the property as determined by the court or the sale price at the trustee's sale, whichever is higher.

1971 Ariz. Sess. Laws, ch. 136 § 7.

What we now know as subsection D began as subsection B in 1971.  At that time, it read as follows: "If no action is maintained for a deficiency judgment, as provided for in subsection A of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the debt and no right to recover a deficiency in any action shall exist."  *Id*.  Thus, at their birth in 1971, subsection A established a three-month window in which one could "maintain[]" "an action . . . to recover a deficiency judgment for the balance due on the contract" and subsection B established a consequence for not "maintain[ing]" the "action . . . provided for in subsection A."

Subsections A and B remained like this until 1984.  In that year, the legislature amended subsection A with various minor clarifications such as specifying that "fair market value" is measured as of the date of the trustee's sale, and that deficiency judgments include interest from the date of the trustee's sale.  *See* 1984 Ariz. Sess. Laws, ch. 121 § 17. Subsection B did not change.

15

Subsections A and B began to drift apart in 1988, when the legislature bumped subsection B down to subsection C, and inserted a new subsection B. This new subsection B addressed the "obligation of a person who is not a trustor to pay, satisfy or purchase all or part of the balance due on a contract secured by a trust deed." 1988 Ariz. Sess. Laws, ch. 22 § 1. Actions against such non-trustors could be maintained "separate and independent of a trustee's sale or action for a deficiency, whether commenced or maintained before, during or after the trustee's sale." *Id.* Further, "[s]uch action or actions [would] not [be] subject to the time or fair market value limitations of subsection A . . . ." *Id.*

Although most of new subsection B discussed obligations of non-trustors and generally exempted them from the requirements of subsection A, new subsection B also clarified an issue that only trustors would need to worry about: when the three-month period from subsection A would begin to run if circumstances required multiple trustee's sales (either because the first trustee's sale did not dispose of all the trust property or because more than one trust deed secured the same obligation). *Id.* In such a situation, the three-month clock would begin to run "on either the date of the trustee's sale of the last of the trust property to be sold or the date of sale under the last trust deed securing the obligation, whichever occurs last." *Id.*

As for *old* subsection B, now subsection C, it retained much of its original character, but now needed to accommodate new subsection B's treatment of non-trustors. Accordingly, it changed to read: "<u>Except for an action pursuant to subsection B of this section,</u> if no action is maintained for a deficiency judgment, as provided for in subsection A of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the debt and no right to recover a deficiency in any action shall exist." *Id.* (emphasis indicates insertion).

Additional amendments in 1989 brought these subsections very close to their current state. The three-month window prescribed by subsection A was changed to 90 days. 1989 Ariz. Sess. Laws, ch. 192 § 1. New subsection B's provisions relating to non-trustors were struck out, leaving only the clause about when subsection A's 90-day time period begins to

run where multiple trustee's sales relating to the same property are necessary.  *Id.*  Part of the material struck regarding non-trustors ended up in a new subsection C, thus displacing the previous subsection C (which had been subsection B) to subsection D.  And new subsection C changed course.  The year before, the statute had said that actions against non-trustors need not be brought within the time limits of subsection A.  New subsection C, however, declared the opposite: actions against non-trustors must be brought within subsection A's 90-day time limit.  *Id.*

Part of the previous year's concern for non-trustors also ended up in subsection A. Since 1971, subsection A had stated that "an action may be maintained to recover a deficiency judgment for the balance due on the contract for which the trust deed was given as security," and that "[s]uch deficiency judgment shall be" calculated in a certain way.  Now subsection A specified: "an action may be maintained to recover a deficiency judgment <u>against any person directly, indirectly or contingently liable on the contract for which the</u> <u>trust deed was given as security including any guarantor of or surety for the contract and any</u> <u>partner of a trustor or other obligor which is a partnership.  In any such action against such</u> <u>a person, the</u> deficiency judgment shall be [calculated in essentially the same way it had been since 1971]."  *Id*. (emphasis indicates insertions).

As for subsection A's increasingly distant companion, subsection B-then-C-now-D, it also received an amendment.  It now read, "If no action is maintained for a deficiency judgment~~, as provided for in subsection A of this section~~ <u>within the time period prescribed</u> <u>in subsections A and B of this section,</u> the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the ~~debt~~ <u>obligation</u> and no right to recover a deficiency in any action shall exist."  *Id.* (emphasis indicates insertions; strikeout indicates deletions). This is how subsection D reads today.

Subsection A, however, received one more major revision in 1990.  At that time, the legislature added an extensive clause governing the issue of "fair market value," including a provision for the "judgment debtor" to apply to "the court in the action for a deficiency judgment or in any other action on the contract" for a "determination of the fair market value

17

of the real property." 1990 Ariz. Sess. Laws, ch. 341 § 4. Subsection A has not substantially changed since this insertion.

**B.    Implications of § 33-814's Textual Development**

The foregoing review of § 33-814's history confirms two things. First, as previously discussed, subsection A's "action . . . to recover a deficiency judgment" does not refer to *all* actions against any person in which the damages are measured by the difference between the sale price and the indebtedness. Rather, it is a specific type of action that the beneficiary of a trust deed can bring against specific persons for a specific measure of damages on the secured contract. Second, there is no reason to believe that subsection D's reference to an "action . . . maintained for a deficiency judgment" refers to anything other than the "action . . . to recover a deficiency judgment" described in subsection A. Indeed, this would not be debatable but for the 1989 amendments. Before 1989, what is now subsection D had read, "If no action is maintained for a deficiency judgment, as provided for in subsection A of this section . . . ." 1971 Ariz. Sess. Laws, ch. 136 § 7. Thus, under this wording, the only "action . . . for a deficiency judgment" that mattered was the action "provided for in subsection A." In 1989, however, the legislature changed this to say, "If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B . . . ." 1989 Ariz. Sess. Laws, ch. 192 § 1.

There is no persuasive reason to think that an "action . . . for a deficiency judgment *within the time period prescribed in* subsection[] A" is substantially different than an "action . . . for a deficiency judgment, *as provided for in* subsection A." And indeed, Defendants agreed at oral argument that the change in phrasing does not change the substance.[4]

---

[4] For the sake of thoroughness, the Court would reject a contrary argument. Such an argument would rest on the improbable assumption that the legislature intended the words "deficiency judgment" in the 1989 amendments to subsection D to refer to something different than every other instance of "deficiency judgment" in § 33-814. To compound the improbable, one would have to assume also that the radically different content of this other "deficiency judgment" was so obvious that the legislature felt no need to define it, even though it would go by the same name as the more specific type of "deficiency judgment" in

18

Subsection D continues to perform the same function it performed in 1971, when it immediately followed subsection A. Specifically, it says that if a trust beneficiary does not bring an "action . . . for a deficiency judgment" within 90 days of the last trustee's sale related to that property, then "no right to recover a deficiency" — a specific type and measure of damages against a specific type of defendant — "in any action shall exist." In short, the only thing subsection D bars after 90 days is the "action . . . to recover a deficiency judgment" described in subsection A.

## C.     "Indirectly Liable"

Although Defendants agree that subsection D limits only subsection A's "action . . . to recover a deficiency judgment," Defendants point out that such an action may be brought "against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security." Defendants argue that "indirectly . . . liable on the contract" is broad enough to protect third parties accused of tortious wrongdoing or breach of other contracts, such as themselves. Defendants stretch subsection A too far.

Section 33-814, in context, contemplates contractual liability because deeds of trust may be given only to secure performance of a contract. *See* A.R.S. § 33-801(8) ("'deed of trust' means a deed executed . . . to secure the performance of a contract"). Subsection A's reference to indirect contractual liability applies to third parties who, by further contract (such as a guaranty) have agreed to fulfill the obligations of the primary borrower. It also applies to third parties whose relationship to the primary borrower renders them liable by operation of law for the primary borrower's contract. Such third parties include partners, agents' principals, and debtors' estates. *See*, *e.g.*, A.R.S. § 33-814(A) (specifying that a deficiency action may be brought against "any partner of a trustor or other obligor which is a partnership"); *Restatement (Third) of Agency* § 6.03 (2006) (undisclosed principal usually liable for agent's contracts). But § 33-814 contains no indication that the legislature intended the phrase "indirectly . . . liable on the [secured] contract" to include sellers, escrow agents,

_____

subsection A and elsewhere in the statute since 1971.

and mortgage brokers who are not liable on the secured contract.  Such parties remain liable within the specific limitations periods prescribed for their alleged wrongful acts.  *See*, *e.g.*, A.R.S. § 12-543(3) (fraud); A.R.S. § 12-548 (written contract executed within the state).  They need not be sued within 90 days of the trustee's sale.

**D.	Case Law Regarding the Meaning of "Deficiency"**

Arizona cases discussing the meaning of "deficiency" do not support the conclusion that A.R.S. § 33-814(D) protects parties not liable on the secured contract.

In an early mortgage case, the Arizona Supreme Court stated:

> Technically speaking, there is no such thing under our law as a "deficiency judgment" in the sense that a formal judgment of that description is rendered by the court . . . .  There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist after the issuance and return of the special execution [*i.e.*, the court order permitting sale of the property to satisfy the debt] . . . .  It has nevertheless been customary in ordinary parlance to refer to the amount still due after the return of the special execution as a "deficiency judgment" . . . .

*Bank of Douglas v. Neel*, 30 Ariz. 375, 381, 247 P. 132, 134 (1926).  As is apparent from the mention of special executions, *Bank of Douglas* involved a lender who sued the borrowers on the note, obtained a judgment for the outstanding debt, and then received a writ of special execution to foreclose on the mortgage securing the note.  Suing on the note first and then judicially foreclosing is a materially different procedure from a non-judicial trustee's sale first authorized by the Deed of Trust Act in 1971.

Nonetheless, some post-1971 cases have re-animated *Bank of Douglas*'s language about what "deficiency" means.  In *Kries v. Allen Carpet, Inc.*, for example, the Arizona Supreme Court quoted *Bank of Douglas* in support of the notion that "what is commonly referred to as a deficiency judgment . . . is not a separate judgment as such."  146 Ariz. 348, 349, 706 P.2d 360, 361 (1985).  But *Kries*, like *Bank of Douglas*, dealt with a judicial action in which a seller first obtained a judgment against a non-paying buyer and then received a writ of execution against the buyer's property.  *Id*.  Further, *Kries* nowhere mentioned any

statute relating to deeds of trust, but instead focused almost entirely on the effect of certain redemption statutes, which apply only in mortgage foreclosure procedure. *See id.* at 349–51, 706 P.2d at 361–63. Given that a trustee's sale cuts off all redemption rights, *see* A.R.S. § 33-811(E), the court in *Kries* could not have had subsection D's "deficiency judgment" in mind.

Another post-1971 case on the meaning of "deficiency judgment" also arose from a judicial judgment before the sale of the collateral, although discussion of trust deeds obscures that fact. In *Citibank (Arizona) v. Bhandhusavee*, the lender sued borrowers who had defaulted on a commercial real estate loan secured by multiple deeds of trust. 188 Ariz. 434, 435, 937 P.2d 356, 357 (Ct. App. 1996). Through a settlement agreement, the lender obtained a stipulated money judgment against the borrowers and then conducted trustee's sales with proceeds applied to the judgment, but the trustee's sales did not fully compensate the lender. *Id.* Three years later, the lender garnished the borrowers' wages. The borrowers objected that the garnishment amounted to a "deficiency judgment" that should have been brought within 90 days of the trustee's sale, as required in subsection D. *Id.*

The court rejected the borrowers' argument. The court outlined the procedures for obtaining a deficiency judgment under § 33-814, with specific discussion of subsections A, C, and D. *Id.* at 436–37, 937 P.2d at 358–59. To dispel "the confusion that arises under foreclosure law regarding the nature of a 'deficiency judgment,'" the court quoted *Bank of Douglas* for the notion that, "'[t]echnically speaking, *there is no such thing under our law as a "deficiency judgment" . . . . There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist . . . .*'" *Id.* at 437, 937 P.2d at 359 (ellipses added; emphasis in original). Finally, the court concluded that the judgment against the borrowers on the note personally established their entire liability and that the lender did not need to bring a second action specifically for a deficiency after the trustee's sales. *Id.*

*Bhandhusavee*'s quotation from *Bank of Douglas*'s pre-Deed of Trust Act discussion of a "deficiency judgment" does not tell us much about § 33-814. Under § 33-814, the only available court judgment comes *after* the trustee's sale, and that judgment is not for the "full

amount of the indebtedness."  In *Bhandhusavee*, the lender obtained a money judgment *before* the trustee's sales, and therefore all of § 33-814's provisions for calculating the "deficiency" with reference to fair market value and so forth were inapplicable.  Indeed, the procedures followed by the lender in *Bhandhusavee* tracked those used in a traditional judicial foreclosure on a mortgage — albeit accomplished through post-judgment trustee's sales rather than special executions.  Ultimately, *Bhandhusavee* addressed a mortgage/trust deed hybrid spawned by the parties themselves, which does not apply in this case and does not clarify the meaning of "deficiency" in § 33-814.

## VI.  Issues for Another Day

Some questions that may eventually arise under the Deed of Trust Act do not arise on this motion, and whatever the answers may be, they do not undercut the conclusions in this order.  One such question is whether a borrower/trustor who actively defrauds the lender/beneficiary, as the borrower Coughlin is alleged to have done in this case, is protected by § 33-814's 90-day limitations period from an action grounded in fraud in addition to a claim for deficiency on the secured contract.  This is not an obvious consequence of the Deed of Trust Act.  The California anti-deficiency statute, for example, does not bar fraud actions against borrowers, despite its otherwise strongly pro-borrower policies.  *Guild Mortg. Co. v. Heller*, 193 Cal. App. 3d 1505, 1512, 239 Cal. Rptr. 59, 63 (1987) ("A suit for fraud obviously does not involve an attempt to recover on a debt or note.  As such, it stands separate and apart from any action which the antideficiency legislation seeks to preclude."); *Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 138–39, 135 Cal. Rptr. 802, 824 (1977) ("The defense of [California's anti-deficiency statute] is not available to the trustor as a defense to an action by the beneficiary for fraud.").

In Arizona, however, it may be that the borrower is so protected as the explicit beneficiary of the 90-day limitation.  Policy reasons may disfavor the possibility of leaving borrowers exposed to alternative liability theories, such as fraud, when the borrower can no longer be sued for a deficiency as such.  But if a defrauding borrower is protected from fraud suits, it hardly means that other participants in the fraud should share in that immunity, or

that violators of their own separate contracts with the lender should have special privilege to do so.

Similarly, if the defrauding borrower escapes under the 90-day limitation, it may mean that third parties who may later be sued by the lender are barred from seeking indemnification from the borrower. Whether there otherwise would be any such right to indemnification, and whether it is lost, could turn on complicated considerations of precedent, policy, and the specially favored position of trustors under the Deed of Trust Act. If the best answer to that question is that the defrauding borrower escapes a duty to indemnify, the otherwise liable third parties can protect themselves by hewing to their legal duties in the first place. Contrary to Defendants' arguments, such an outcome would not weigh in favor of a surprising, onerous, and textually dubious 90-day limitations period for all claims against all parties.

## VII. Conclusion

The restrictions in A.R.S. § 33-814(D) on a "deficiency" apply only to actions against those "directly, indirectly or contingently liable on the contract for which the trust deed was given as security," *id*. § 33-814(A). Plaintiff's claims against Defendants are not claims against those "directly, indirectly or contingently liable on the [secured] contract." Accordingly, subsection D does not protect Defendants from liability, even if the damages assessed against such Defendants are calculated based on the indebtedness that M&I was unable to recover through the trustee's sale.

IT IS THEREFORE ORDERED that Defendants Lawyers Title Insurance Company and Vicki Collier's Motion for Judgment on the Pleadings (Doc. 80), in which Defendant Blue Brick Financial, LLC and Defendants James and Janae Jarnigan joined (Docs. 81, 95), is DENIED.

DATED this 9th day of August, 2011.

_____
Neil V. Wake
United States District Judge